Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MANUEL FELICIANO TORO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202400665 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre: Reclasificación de Custodia |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de enero de 2025.

Comparece Manuel Feliciano Toro (en adelante, señor Feliciano Toro o recurrente) mediante un *Recurso de Revisión Judicial*, para solicitarnos la revisión de la *Resolución* emitida y notificada, el 9 de septiembre de 2024, por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (en adelante, Comité y/o DCR).[1] Mediante la *Resolución* recurrida, el Comité reclasificó al recurrente de custodia mínima a mediana. Sobre dicha *Resolución*, el recurrente presentó una oportuna solicitud de reconsideración. Atendido el referido petitorio, mediante determinación del 23 de septiembre de 2024, notificada al recurrente el 8 de noviembre de 2024, se dispuso no acoger la solicitud instada.[2]

Por los fundamentos que expondremos, se *confirma* la *Resolución* recurrida.

---

[1] Expediente administrativo, a las págs. 5-6.
[2] *Íd.*, a la pág. 13.

Número Identificador

SEN2025_____

I

El recurrente es miembro de la población correccional de la institución Ponce 1000.[3] Mientras se encontraba cumpliendo con una sentencia de cuatro (4) años por infringir la Ley para la Protección de la Propiedad Vehicular[4], el 22 de abril de 2024, fue sentenciado por delitos de tentativa de secuestro, conspiración, declaración falsa y perjurios.[5] En consecuencia, al amparo del Manual para la Clasificación de los Confinados (Manual),[6] el DCR realizó una evaluación no rutinaria a los fines de evaluar el plan institucional del recurrente.[7] A esos fines, el 9 de septiembre de 2024, el DCR emitió un *Informe para evaluación de plan institucional*, en el cual recomendó, entre otras cosas, reclasificar al recurrente de custodia mínima a mediana. Ello, puesto a que, a pesar de que su escala de reclasificación arrojaba una puntuación de tres (3), lo cual sugería un nivel de custodia mínima, la naturaleza de los delitos por los cuales fue sentenciado requería un nivel de supervisión mayor.[8]

Evaluado lo anterior, ese mismo día, es decir, el 9 de septiembre de 2024, el Comité acogió las recomendaciones del informe y acordó reclasificar al recurrente de custodia mínima a mediana. En virtud del referido acuerdo, igualmente, el 9 de septiembre de 2024, se emitió y notificó la *Resolución* que nos ocupa. En la misma, el Comité expuso que, a consecuencia de la sentencia del 22 de abril de 2024, la pena del recurrente aumentó a diez años, por lo que cumpliría el máximo de su sentencia en octubre de 2033. Además, el Comité indicó que la naturaleza de los delitos y la sentencia impuesta requería mayores restricciones a las que tenía

---

[3] Expediente administrativo, a la pág. 2.
[4] Ley Núm. 8 de 5 de agosto de 1987, 9 LPRA sec. 3201 nota *et seq.*
[5] Expediente administrativo, a la pág. 9.
[6] Reglamento Núm. 9151 del 22 de enero de 2020.
[7] Expediente administrativo, a la pág. 1.
[8] *Íd.*, a las págs. 2-4.

el recurrente, ello para contribuir a mantener la sociedad protegida de personas que han infringido las reglas formales de comportamiento, de manera que se debía reclasificar al recurrente en custodia mediana.[9]

En desacuerdo, el 11 de septiembre de 2024, el recurrente solicitó que se reconsiderara su reclasificación de custodia. Evaluada la solicitud, el 23 de septiembre de 2024, se determinó no acogerla, lo cual fue notificado al recurrente el 8 de noviembre de ese mismo año.[10]

Inconforme, el 2 de diciembre de 2024, el recurrente presentó un recurso de revisión en el cual esgrimió, en síntesis, que el Comité incidió al aumentar su clasificación de custodia de una mínima a una mediana, sin los argumentos necesarios y basado únicamente en la gravedad del delito.

Luego, el 26 de diciembre de 2024, compareció el DCR para presentar copia certificada del expediente administrativo. Por otro lado, el 2 de enero de 2025, compareció el DCR, por conducto de la Oficina del Procurador General para presentar su oposición al recurso. Ese mismo día, el recurrente presentó la solicitud para que se le eximiera del pago de aranceles por razón de indigencia. Así, pues, el 9 de enero de 2025, autorizamos al recurrente a litigar como indigente.

Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

**A. Revisión Judicial**

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la

---

[9] Expediente administrativa, a las págs. 5-6.
[10] *Íd.*, a las págs. 11-13.

Constitución de Puerto Rico.[11] El Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico[12] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[13] La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[14] Esta doctrina dispone que corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados, y si son compatibles con la política pública que las origina.[15] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[16] Nuestro Alto Foro ha establecido que el derecho a una notificación adecuada concede a las partes la oportunidad de tomar conocimiento real de la acción tomada por la agencia. Además, otorga a las personas, cuyos derechos pudieran quedar afectados, la oportunidad para decidir si ejercen los remedios que la ley les reserva para impugnar la determinación.[17]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder una gran deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido

---

[11] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda,* 179 DPR 720, 736 (2010).
[12] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[13] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[14] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[15] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[16] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA,* 149 DPR 263, 279-280 (1999).
[17] *Asoc. Vec. Altamesa Este v. Municipio de San Juan,* 140 DPR 24, 34 (1996).

encomendados.[18] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[19] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[20] Ahora bien, lo anterior únicamente surtirá efecto si la decisión se basa en evidencia sustancial que obra en el expediente administrativo.[21] En cuanto a la evidencia sustancial, se ha definido  como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[22] Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto aquella que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[23] Ello, implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia.[24] Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos, y no los tribunales.[25]

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[26] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor

---

[18] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[19] *Íd.*
[20] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[21] *Otero v. Toyota*, 163 DPR 716, 727 (2005).
[22] *Batista, Nobbe v. Jta. Directores,* supra, a la pág. 216; *Otero v. Toyota*, supra, a la pág. 728.
[23] *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997).
[24] *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[25] Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013.
[26] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al.  v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[27] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las determinaciones de hecho, y no sustituirá el criterio de la agencia por el suyo.[28] En cambio, las conclusiones de derecho son revisables en todos sus aspectos.[29] En esta tarea, los tribunales están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra.[30] Así pues, si el fundamentos de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable en toda su extensión.[31]

Sin embargo, aun cuando el Tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente.[32] Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el Tribunal debe abstenerse de intervenir.[33] Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su

---

[27] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).

[28] *Otero v. Toyota*, supra, a la pág. 728.

[29] *García Reyes v. Cruz Auto Corp.*, supra, a la pág. 894.

[30] *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000).

[31] *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

[32] *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007); *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012).

[33] *Cruz v. Administración*, 164 DPR 341, 357 (2005).

actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[34] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[35]

### B. Clasificación de los Confinados

La Constitución del Estado Libre Asociado de Puerto Rico establece como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social".[36] En mérito de lo anterior, se ha establecido la clasificación de confinados como un método para la administración eficiente y eficaz del sistema correccional, delegado al Departamento de Corrección.[37] El referido método consiste en una separación sistemática en subgrupos, en virtud de las necesidades del confinado, desde la fecha de su fecha ingreso hasta su excarcelación.[38]

Existen tres (3) niveles de custodia, los cuales se basan en el grado de supervisión que requiere el confinado, estos son: (i) máxima, en la cual se colocan a los confinados que requieren un grado alto de control; (ii) mediana, en la cual se encuentran los confinados que requieren un grado intermedio de supervisión, y (iii) mínima, en la cual los confinados son elegibles para habitar en

---

[34] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012), citando a *Empresas Ferrer v. A.R.Pe.*, supra.
[35] *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR __ (2024).
[36] Artículo VI sec. 19.
[37] Reglamento Núm. 915, *supra,* Introducción; *Rivera Torres v. Universidad de Puerto Rico,* 209 DPR 489, 499 (2022).
[38] *Íd.*

viviendas de menor seguridad y pueden trabajar fuera del perímetro con un mínimo de supervisión.[39] El nivel de custodia se determinará tomando en cuenta los siguientes factores: "severidad del delito, su historial de delitos anteriores, su comportamiento en instituciones, los requisitos de seguridad y supervisión, y las necesidades de programas y servicios en específico".[40] A su vez, nuestro Tribunal Supremo enfatizó que la determinación en cuanto al nivel de custodia requiere que se realice un balance de intereses adecuado. Ello, puesto a que, por un lado, se encuentra el interés público de rehabilitar al confinado y de mantener la seguridad institucional y de la población penal; mientras que, por otro lado, se encuentra el interés propio del confinado de permanecer en determinado nivel de custodia.[41]

Luego de que el Departamento de Corrección clasifique de manera inicial a un confinado, tendrá el deber de hacer una revisión periódica en lo que respecta su nivel de custodia.[42] La custodia de aquellos confinados que se encuentran en mínima y mediana deberá ser revisadas cada doce (12) meses; mientras que, los que se encuentran en máxima, y que cumplieron su primer año en esa clasificación, se les deberá revisar su custodia de cada seis (6) meses.[43] Por otra parte, se efectuaran revisiones automáticas no rutinarias en el caso de cambios en los cargos o en la sentencias, entre otras circunstancias.[44]

Ahora bien, la revisión de custodia no necesariamente tiene como resultado un cambio de nivel, su propósito es evaluar la adaptación del confiando y considerar las situaciones que puedan

---

[39] Reglamento Núm. 9151, *supra*, Sec. 1.
[40] *Íd.*
[41] *Ibarra Gonzalez v. Depto. Corrección*, 194 DPR 29, 44 (2015), citando a *Cruz v. Administración*, supra, a la pág. 352.
[42] Reglamento Núm. 9151, *supra*, Sec. 1.
[43] *Íd.*, Sec. 7 (III) (B) (1) (a) y (b).
[44] *Íd.,* Sec. 7 (III) (B) (2) (b).

acaecer.[45] El procedimiento de evaluación lo iniciará un Técnico Sociopenal (Técnico) quien hará una recomendación luego de: (i) examinar el expediente del confinado y entrevistarlo; (ii) revisar las puntuaciones de aptitud correspondiente a educación, adiestramiento y trabajo; (iii) comunicarse con el tribunal y otras fuentes para obtener información adicional; (iv) llenar el formulario que contiene la Escala de reclasificación de custodia, entre otras cosas.[46] En cuanto a la Escala de Reclasificación de Custodia, en esta el Técnico hace un círculo alrededor del nivel de custodia que corresponde a la puntuación obtenida en la evaluación realizada al confinado.[47] El técnico se guiará por la siguiente escala:

> Mínima = 5 puntos o menos
>
> Mediana = 5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de detención por violarla libertad bajo palabra o probatoria.
>
> Mediana = 6-10 puntos en los renglones 1-8
>
> Máxima = 7 puntos o más en los renglones 1-3
>
> Máxima =11 puntos o más en los renglones 1-8.[48]

Luego de llevada a cabo la antedicha evaluación, las recomendaciones del Técnico serán enviadas al Comité de Clasificación y Tratamiento (Comité) para su revisión y determinación, basada en "el análisis de la totalidad de los expedientes del confinado desde su ingreso hasta el momento de su evaluación conforme a la Reglamentación aplicable".[49] Precisa señalar que la puntación obtenida en la Escala de Reclasificación no limita al Comité al momento de clasificar al confinado. Entiéndase, que, al tomar una determinación en cuanto al nivel de custodia, el Comité puede asignar un nivel distinto al obtenido en la Escala de

---

[45] Reglamento Núm. 9151, *supra,* Sec. 7 (II); *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501.

[46] *Rivera Torres v. Universidad de Puerto Rico*, supra, a la pág. 501. Véase, además, Reglamento Núm. 9151, *supra,* Sec. 7 (III) (C).

[47] Reglamento Núm. 9151, *supra*, Apéndice K, Sec. III (A).

[48] *Íd.*, Apéndice K, Sec. III (A).

[49] *Íd.*, Sec. 7 (IV) (B).

Reclasificación, siempre y cuando incluya una justificación escrita de las razones por las cuales el nivel es distinto al recomendado.[50] Ello, así, puesto a que la clasificación de un confinado en un nivel de custodia no se basa únicamente en la puntuación obtenida en la Escala de Reclasificación, es el resultado de:

> (1) la puntuación en la evaluación de custodia; (2) las consideraciones especiales de manejo; (3) las modificaciones no discrecionales; (4) las modificaciones discrecionales para un nivel de custodia más alto, y (5) las modificaciones discrecionales para un nivel de custodia más bajo.[51]

Una de las modificaciones discrecionales propuestas por el Manual, la cual permite al Comité a asignar un nivel de custodia más alto, es cuando la puntuación subestima la gravedad del delito.[52] Ahora bien, "[e]l personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación".[53]

Por último, cabe resaltar que el Departamento de Corrección Y Rehabilitación merece particular deferencia en cuanto al proceso de clasificación de confinados. En consecuencia, si una determinación de clasificación de custodia es razonable, cumple con el procedimiento dispuesto por las reglas y manuales, y no altera los términos de la sentencia impuesta, debe confirmarse.[54]

### III

En presente caso, el señor Feliciano Toro comparece ante nos para expresar su inconformidad con una *Resolución* del Comité de Clasificación y Tratamiento, en la cual se dispuso que el recurrente debía reclasificarse de una custodia mínima a una mediana. El

---

[50] Reglamento Núm. 9151, *supra,* Apéndice K, Sec. IV (B).
[51] *Rivera Torres v. Universidad de Puerto Rico,* supra, a la pág. 501
[52] Reglamento Núm. 9151, *supra,* Apéndice K, Sec. III (D).
[53] *Íd.*
[54] *Rivera Torres v. Universidad de Puerto Rico,* supra, a las págs. 503-404; *Cruz v. Administración,* supra, a la pág. 355.

recurrente afirma que el Comité carecía de fundamentos para optar por la antedicha determinación.

Según reseñamos previamente, aunque la custodia de los confinados que se encuentran en mínima y mediana, como era el caso del aquí recurrente, deben ser revisadas cada doce (12) meses,[55] el Manual dispone que se llevarán a cabo revisiones automáticas no rutinarias cuando ocurran cambios en los cargos o en las sentencias, entre otras circunstancias.[56] Así, pues, al recurrente se le efectuó una revisión de custodia cuando, mientras se encontraba recluido cumpliendo una pena por la infracción de otros delitos, fue sentenciado por delitos de tentativa de secuestro, conspiración, declaración falsa y perjurios. Aunque en la evaluación realizada por el Técnico el recurrente arrojó una puntuación de tres (3) en la Escala de Reclasificación, lo cual lo cualificaba para custodia mínima, se recomendó reclasificarlo en custodia mediana. Ello, puesto a que, según se expresó como justificación para la modificación discrecional, "su calificación en custodia mínima [se] basaba en delito de Ley Vehicular con la sentencia de 4 años. Actualmente sus delitos son mas agravados, su sentencia es más alta por lo que su mínimo y su máximo son más extensos".[57] Evaluado lo anterior, el Comité determinó reclasificar al recurrente en custodia mediana, "basado en la sentencia actual, los delitos actuales, la fecha prevista de excarcelación, historial delictivo entre otros criterios [. . .]".[58] Detalló que dado a la naturaleza de los delitos y la sentencia impuesta el recurrente requería mayor restricción que las actuales.[59]

Según indicamos en nuestra exposición doctrinal, la determinación de reclasificar a un confinado a un nivel de custodia

---

[55] Sec. 7 (III) (B) (1) (a) y (b) del Reglamento Núm. 9151, *supra.*
[56] *Íd.,* Sec. 7 (III) (B) (2) (b).
[57] Expediente Administrativo, a la pág. 9.
[58] *Íd.,* a la pág. 6.
[59] *Íd.*

distinto no se basa únicamente en la puntuación obtenida en la Escala de Clasificación, ello dependerá de las circunstancias de cada caso y de las modificaciones discrecionales y no discrecionales que dispone el Manual y aplique el Comité, lo cual puede resultar en que el confinado se le clasifique en un nivel de custodia más bajo o alto. Una de las modificaciones discrecionales que propone el Manual, y la cual fue aplicada en este caso, es cuando la puntuación subestima la gravedad del delito.[60] Cuando se aplica esta modificación discrecional es necesario que se "documenten las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación". Conforme hemos reseñado, en el informe preparado por el Técnico, así como en la *Resolución* final del Comité surge con claridad que se documentó y se detalló que la modificación en el nivel de custodia del recurrente se debió a la naturaleza de los delitos de secuestro, perjurio, declaración falsa y conspiración y al aumento en el mínimo y el máximo de la sentencia. Así, pues, habiéndose cumplido lo que dispone la reglamentación vigente para reclasificar al aquí recurrente de custodia mínima a mediana y siendo la determinación del Comité una razonable, nos es forzoso confirmar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *confirma* la Resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[60] Reglamento Núm. 9151, *supra*, Apéndice K, Sec. III (D).